F. L. LaForce, Respondent, v. The Williams City Fire Insurance Company, Appellant.

Kansas City Court of Appeals, February 2, 1891.

1. **Insurance :** TIMELINESS OF NOTICE : WAIVER. A policy of insurance required immediate notice, and a notice was given fourteen days after the loss, which is held out of time, but the insurer in acknowledging receipt of said notice and accompanying proofs, asserted their non-liability on the ground that there had been no fire. *Held* that there was a waiver of the want of timeliness of the notice.

LaForce v. The Williams City Ins. Co.

43  518
101  1323

2. ———: CONSTRUCTION OF POLICY: DESCRIPTION OF PREMISES: DOUBT: RULE. If there is doubt as to the premises insured arising from the description in the policy, such doubt must be resolved in favor of the assured. If the words employed of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the assured; and so, where the description was "his two-story, brick dwelling-house with addition, occupied for family residence and situated," etc., it is *held* that keeping a can of gasoline in the yard ten or twelve feet from the house was not keeping it stored or used on or in the premises within the meaning of the terms employed in the clause prohibiting the storage or use of gasoline in or on the premises described in the policy.

3. ———: ———: USE OF GASOLINE ON OR IN INSURED PREMISES. A policy of insurance was to become void if gasoline "was kept, stored or used in or on the premises therein described." *Held* the occasional introduction of small quantities of gasoline into the house, for the purpose of destroying vermin and cleaning clothes, was not such an habitual use thereof "on or in the premises" as was forbidden by the prohibitory clause of the policy.

4. ———: VIOLATION OF POLICY BY TENANT: CONSENT OF ASSURED: INSTRUCTION: REVERSAL. The violation of any of the provisions of a policy by the tenant of the assured is a violation by the assured himself; and an instruction requiring the jury to find that the tenant's violation was without the knowledge or consent of plaintiff, while error, as requiring the jury to find a fact which was not essential to plaintiff's right of recovery, in no way prejudiced the defendant, and constitutes no ground for complaint.

5. ———: CONSTRUCTION OF POLICY: HABITUAL AND OCCASIONAL USE: CAUSE OF LOSS: EVIDENCE: INSTRUCTION. The use of gasoline prohibited in the policy is an habitual use, and not an occasional use; and the evidence in this case is *held* not to establish the habitual use of gasoline on the premises, and an instruction telling the jury what facts they must find in order to determine whether loss was caused by fire within the meaning of the policy is approved, as is also the action of the trial court in refusing certain instructions asked by the defendant and set out in the opinion.

6. ———: ———: INSTRUCTION SUBMITTING QUESTION OF LAW. It was for the court, and not for the jury, to say upon the undisputed facts of this case, whether the use of gasoline was such as to avoid the policy, and an instruction asked submitting that question to the jury was rightly refused.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

Statement by the court.

This was a suit brought by the plaintiff against the defendant in the circuit court of Jackson county, upon a fire-insurance policy. The answer admitted the execution of the policy. There was a denial of performance of all the conditions to be performed by the plaintiff, followed with the allegation that the policy was avoided by the keeping, storing and using of gasoline on the premises insured, and that the defendant, by the terms of the policy, was exempt from liability for damage by fire if caused by an explosion, etc. Policy of insurance read that, "The Williamsburg Fire Insurance Company of Brooklyn, New York, in consideration of $40, does insure F. L. LaForce to the amount of $4,000 *on his two-story, brick dwelling-house, with addition, occupied for family residence,* and situated on the southwest corner of Wyandotte and Eleventh street, Kansas City, Missouri, against all such immediate loss or damage sustained by the assured as may occur by fire to the property above specified, but not exceeding the interest of the assured, and except as hereinafter provided, for the term of three years, * * * subject to the following terms and conditions : This policy shall become void, unless consent in writing is indorsed by the company hereon, in each of the following instances, viz. : * * * *Sixth.* If any of the following articles named be kept, stored or used in or on the premises herein described, viz. : * * * gasoline. This company shall not be liable under this policy for loss or damage by fire in any of the following instances, viz. : * * * *Second.* If caused by explosion of any kind, unless fire ensues, and then for the loss by fire only. *Third.* If the building herein described

or any· part thereof fall, except the fall is the result of fire.  * * *  *Sixth.*   For any consequential or constructive loss or damage, beyond the actual damage by fire to the property, whether such loss or damage be occasioned by any ordinance or law regulating the construction or repair of the buildings or otherwise.''

The evidence in the record discloses the salient facts of the case to be that the house belonged to the plaintiff, and had been rented by him to Albert Phenis, who occupied it as a family residence, and he had in his employ, as housekeepers, Sarah Evans and her mother. The plaintiff did not live in or in any way occupy the house or any part of it himself.   A five-gallon can containing gasoline was, by the tenant or his servants, kept out of doors in the yard and off of the premises described in the policy, about ten or twelve feet from the kitchen. This can had been replenished "probably two or three times" whilst the witness, Sarah Evans, was there, but the evidence does not show how long she was there. The gasoline was used occasionally for the purpose of cleaning dresses, coats, clothing and other like articles.   The evidence does not show that any of the gasoline was ever taken or used on the premises insured, except such as the witness Sarah Evans took into the kitchen occasionally for the purpose of driving away cockroaches, and then it was taken in an old coffee-pot, and poured on the roaches and on such portions of the floor as seemed to be used by the roaches as hiding places.  On the night of the fire, about midnight, she took about a quart of gasoline into the kitchen in the coffee-pot and poured a portion of it at intervals in different places on the floor.   Some of the gasoline poured on the floor dripped through the cracks therein and evaporated, the vapor being confined between the floor and the ground beneath.   There was not sufficient gas in the room above the floor to explode.   A lamp was burning in the room all the time.   About half an hour after she had poured the first gasoline on the floor, she lit a

match to look into a flour-barrel and dropped the lighted match on the floor; there was then no explosion, but soon afterward discovered that a portion of the liquid gasoline on the floor was burning. Liquid gasoline is not explosive. After the fire had extended entirely around the room and had burned the gasoline from three to five minutes, and after the wainscoting around the wall had been ignited, the flames came in contact with the vapor beneath the floor and it exploded, blowing the floor up and shaking the walls down.

The plaintiff fourteen days after the fire gave notice and proof of loss and made claim for his damages. The defendant refused to pay upon the sole ground that the damage was done by an explosion, and that no fire ensued the explosion.

The court gave the following instructions for the plaintiff:

"1. The court instructs the jury that if they believe from the evidence that the witness, Sarah Evans, without the knowledge or consent of the plaintiff, carried some gasoline into the house about half an hour before the fire and explosion, for the purpose of killing or driving away cockroaches which infested the kitchen, and that for that purpose she poured a portion of the gasoline on the floor of the kitchen, then such taking of the said gasoline into said house and such use of it in the kitchen did not constitute such a keeping, storing or using of gasoline in or on premises insured as is prohibited by the terms of the policy, and the policy did not for that reason become void, but remained in force notwithstanding that fact.

"2. The court instructs the jury that if they find from the evidence that the witness, Sarah Evans, without the knowledge or consent of the plaintiff, carried some gasoline into the kitchen of the house insured, about half an hour before the fire or explosion, for the purpose of killing or driving away cockroaches with which said kitchen was infested, and for that purpose

poured some of the gasoline in different places on the floor of the kitchen, and afterwards, by reason of the dropping of portions of a lighted match upon the floor, the liquid gasoline on the floor became ignited and burned, and in burning set fire to the wainscoting, or other portions of the building, and that afterward, and while such fire was in progress, the gas or vapor, generated by the evaporation of the liquid gasoline, came in contact with the flames of such fire and exploded, then the damage done to the building, both by reason of the actual burning and by reason of the concussion, was occasioned by fire within the meaning of the policy, and the verdict must be for the plaintiff for such sum as the jury may believe from the evidence was done to said building by said burning and explosion, with interest thereon at the rate of six per cent. per annum from the thirtieth day of January, 1889, to this date."

The defendant asked, and the court refused to give, the following instructions :

"1.   The court instructs the jury that under the pleadings and evidence in this cause plaintiff cannot recover, and you will find for defendant.

"2.   You are instructed that by the terms of the policy sued on the use of gasoline on the premises insured, for any purpose, was prohibited ; and if you believe from the evidence that at the time of and prior to the fire gasoline was used upon said premises for any purpose, and if the same contributed to the loss, plaintiff cannot recover.

"3.   The court instructs the jury that by the terms of the policy sued on the use of gasoline on the premises was prohibited ; and if you find from the evidence that just prior to the injury to the property gasoline had been used in the kitchen of the house for the purpose of driving away cockroaches, and that the fire was caused by a lighted match coming in contact with the said gasoline, or the vapor thereof, plaintiff is not entitled to recover.

"4. The court instructs the jury that under the terms of the policy read in evidence defendant is not liable for any damage done to plaintiff's house which was caused by explosion; and if you find from the evidence that gasoline had been poured on the kitchen floor, and that by reason of a lighted match coming in contact with said gasoline or its vapor an explosion occurred in said house and said house was thereby damaged, plaintiff is not entitled to recover for any such damage.

"5. The court instructs the jury that if you find from the evidence that the occupants of the house had, prior to the injury thereto, been in the habit of using gasoline therein for the purpose of driving away cockroaches, and just prior to the injury had used gasoline for that purpose, such use was prohibited by the policy sued on, and you will find for defendant."

*Fyke & Hamilton*, for appellant.

(1) Defendant's demurrer to the evidence should have been sustained, because: *First.* No immediate notice of the loss was given as provided by the policy. Notice given fourteen days after the loss was not immediate notice. *Edwards v. Ins. Co.*, 75 Pa. St. 378; *Whitehurst v. Ins. Co.*, 7 Jones' Law ( N. C.) 433; *Brown v. Assurance Corp.*, 40 Hun. 101; *Assurance Co. v. Burwell*, 44 Ind. 460; *Trask v. Ins. Co.*, 29 Pa. St. 198. Nothing was shown or offered to excuse the delay; hence the question as to whether immediate notice was given was a question of law for the court. *Inman v. Ins. Co.*, 12 Wend. 452. *Second.* Plaintiff's evidence showed conclusively that gasoline had been kept and used on and in the premises, in violation of the conditions of the policy. *Appleby v. Ins. Co.*, 54 N. Y. 253; *Sperry v. Ins. Co.*, 26 Fed. Rep. 234; *Reardon v. Ins. Co.*, 135 Mass. 121; *Ins. Co. v. Swigert*, 11 Ill. 590; *Putnam v. Ins. Co.*, 18 Blatch. C. C. 368; *Ins. Co. v.*

*Mehlman*, 48 Ill. 313 ; *Cerf v. Ins. Co.*, 44 Cal. 320.
( 2 ) The court erred in giving plaintiff's instruction,
numbered 1, because : *First.* There was no evidence
that the gasoline was used without plaintiff's knowledge
or consent. *Second.* Even if there had been evidence
of that fact upon which to base the instruction, the
instruction is erroneous because the use of gasoline
was absolutely prohibited, and the use which the evi-
dence shows was made of it, with or without plaintiff's
knowledge, vitiated the policy. *Guenther v. Ins. Co.*, 116
U. S. 113 ; s. c., 134 U. S. 110 ; *Kelly v. Ins. Co.*, 97
Mass. 284 ; *Mead v. Ins. Co.*, 3 Seld. 530 ; 7 W. T. 530 ;
*Diehl v. Ins. Co.*, 58 Pa. St. 443 ; *Duncan v. Ins. Co.*,
6 Wend. 488 ; *City of Worcester v. Ins. Co.*, 9 Gray, 27.
( 3 ) Plaintiff's instruction, numbered 2, is erroneous,
because : *First.* It directs a verdict for plaintiff if
the jury find the gasoline was used without plaintiff's
knowledge or consent. *Second.* It ignores the fact,
which was fully established by plaintiff's own evidence,
that gasoline had been habitually used on the premises,
and virtually directs the jury to find for plaintiff if the
use of gasoline, in the way it was used on that occasion,
was the cause of the fire and explosion. *Hoxie v. Ins.
Co.*, 6 R. I. 517 ; 1 Wood on Fire Ins. [ 2 Ed. ] p. 498.
( 4 ) Defendant's instructions should have been given.
*Westfall v. Ins. Co.*, 12 N. Y. 289 ; *Mead v. Ins. Co.*,
3 Seld. 530 ; *Murdock v. Ins. Co.*, 2 Comstock, 210.
( 5 ) Defendant's fourth instruction should have been
given. Under the terms of the policy defendant is not
liable for damages done by explosion of any kind. 1
Wood's Fire Ins. [ 2 Ed. ] p. 252 ; *Briggs v. Ins. Co.*,
53 N. Y. 446 ; *Stanley v. Ins. Co.*, 3 Exch. 71 ; 5 Ben-
nett's Ins. Cases, 160 ; *In's. Co. v. Dorsey*, 56 Md. 70 ;
*Matran v. Ins. Co.*, 73 N. Y. 310 ; 16 N. Y. ( S. C.) 415.
Defendant's fifth instruction should have been given. If
gasoline had been habitually used on the premises to
drive away cockroaches, such use was certainly a viola-
tion of the policy.

*Dobson & Trimble*, for respondent.

(1) The defendant, by denying liability solely upon the ground that the policy was void and that there had been no fire for which it was liable, will be considered as having waived the defense of want of notice or the introduction of evidence by the plaintiff in reference thereto, and is estopped to raise that point. 1 Wood on Fire Insurance [2 Ed.] sec. 209 ; *Taylor v. Ins. Co.,* 9 How. 405 ; *Ins. Co. v. Sheets & Co.,* 26 Gratt. 854 ; *Bennett v. Ins. Co.,* 14 Blatch. 426 ; *Ins. Co. v. Deford,* 38 Md. 382 ; *Vos & Lightbourne v. Robinson,* 9 Johns. 192 ; *Francis v. Ins. Co.,* 6 Johns. 415 ; *Ins. Co. v. Francis,* 2 Wend. 71 ; *McMasters & Bruce v. Ins. Co.,* 25 Wend. 379 ; *Phillips v. Ins. Co.,* 14 Mo. 220 ; *Ins. Co. v. Sutherland,* 2 Oh. St. 477 ; *O'Neil v. Ins. Co.,* 3 Comstock (N. Y.) 122 ; *Boos v. Ins. Co.,* 64 N. Y. 237. (2) The gasoline can was kept in the yard, from three to twelve feet from the premises described in the policy; hence there can be no pretense that it was kept or stored on the premises so as to avoid the policy. (3) · The use of a prohibited article which will forfeit a policy must be an habitual use for the ordinary purposes to which such article is usually put, and not an occasional introduction and use for a temporary and extraordinary purpose connected with the occupation of the premises. 1 Wood on Fire Ins. [2 Ed.] sec. 84 ; May on Insurance [2 Ed.] sec. 241 ; *Ins. Co. v. Simmons,* 30 Pa. 302 ; *Dobson v. Sotheby,* 22 E. C. L. 481 ; *Williams v. Ins. Co.,* 54 N. Y. 572 ; *O'Neil v. Ins. Co.,* 3 Comst. (N. Y.) 122 ; *Mears v. Ins. Co.,* 92 Pa. St. 20 ; *Gates & Downer v. Ins. Co.,* 5 N. Y. 479 ; *Hynds v. Ins. Co.,* 11 N. Y. 554. (4) This policy does ·not exempt the company from liability for fire resulting from the presence or use of gasoline on the premises ; hence it is wholly immaterial that the gasoline had any connection with the fire. *Merriam v. Ins. Co.,* 21 Pick. 162 ; *Gasner v. Ins. Co.,* 13 Minn. 483 ; *Wetherell v. Ins. Co.,* 16 Gray, 276 ; *Lee v.*

*Ins. Co.*, 3 Gray, 583 ; *Macomber v. Ins. Co.*, 1 Cush. 257. ( 5 ) The policy does not exempt the company from damage done by explosion, if the explosion was caused by fire. There was a fire, within the policy, which preceded and caused the explosion, and in such case the company is liable for the damage done by both the fire and the consequent explosion. Principles of Insurance ( Barber ) page 122 ; 1 Wood on Fire Ins. [ 2 Ed.] sec. 104 ; May on Insurance [ 2 Ed.] sec. 413 ; *Scripture v. Ins. Co.*, 10 Cush. ( Mass. ) 356 ; *Washburn v. Ins. Co.*, 2 Flip. 664 ; *Washburn v. Ins. Co.*, 9 Ins. Law Jour. 68 ; *Washburn v. Ins. Co.*, 9 Ins. Law Jour. 761 ; *Washburn v. Ins. Co.*, 9 Ins. Law Jour. 424. ( 6 ) The owner and insured is not prejudiced by the acts of a tenant who uses gasoline upon the insured premises, unless such use is with the consent or knowledge of the owner. *Sanford v. Ins. Co.*, 12 Cush. 541 ; *Ins. Co. v. Simmons*, 30 Pa. St. 299 ; *White v. Ins. Co.*, 8 Gray, 566. ( 7 ) The language of the policy is the language of the defendant and should be construed most strongly against it. And when the intent of a contract is doubtful, the conditions therein are to be construed strictly against those for whose benefit they are inserted. 1 Wood on Fire Ins. [ 2 Ed.] sec. 60 ; May on Insurance [ 2 Ed.] sec. 175 ; *Morse v. Ins. Co.*, 30 Wis. 540 ; *Washburn v. Ins. Co.*, *supra.*

SMITH, P. J.— I. The first ground of the defendant's appeal is that no immediate notice of the loss was given by the plaintiff to the defendant. The policy upon which this action is founded provides, amongst other things, that " where a fire has occurred injuring the property herein described the assured shall　*　*　* give immediate notice of the loss in writing to this company." The notice was given not until fourteen days after the loss. The object, no doubt, of this general notice, as distinguished from the particular notice required by the terms of the policy to be given later on, was to enable the defendant to institute proper inquiry,

and the giving of it within a reasonable time was necessary to satisfy the requirement of the policy in that respect.   *Whitehurst v. Ins. Co.*, 7 Jones' Law ( N. C.) 433 ; *Edwards v. Ins. Co.*, 75 Pa. St. 378.   The giving of the notice fourteen days after the fire, unaccompanied by any fact or circumstance excusing the delay would, no doubt, be properly held as a matter of law not to be the immediate notice required by the conditions of the policy.   However essential this preliminary notice may be, it seems, according to the authorities, that its timeliness may be waived.   In Flanders on Insurance, pages 541, 542, that writer says : " The insurer may waive the whole or, in part, any of the ordinary proofs.   Their requirement is a formal condition introduced solely for his benefit, and their waiver strikes the condition out of the contract.   The waiver need not be express.   It may be inferred from the act of the insurers which evidence a recognition of liability, or from their denial of obligation exclusively for other reasons.   That if the refusal to pay the loss is put upon the grounds other than the insufficiency or defectiveness of the notice or proofs furnished, the insurers will be held to have waived objections of that character.   The refusal to recognize the existence of any claim, or a general refusal to pay, renders the delivery of notice and proofs a useless ceremony, and is treated as waiving a strict compliance with the conditions as to preliminary notice and proofs in respect to form and time."   And this statement of the law finds recognition and approval in the adjudged cases : *Ins. Co. v. Sheets & Co.*, 26 Gratt. 854 ; *Ins. Co. v. Deford*, 38 Md. 382 ; *Clark v. Ins. Co.*, 6 Cush. 342 ; *Taylor v. Ins. Co.*, 9 How. ( U. S. R.) 390 ; *Phillips v. Ins. Co.*, 14 Mo. 167 ; *Rice v. Railroad*, 63 Mo. 34 ; *Baile v. Ins. Co.*, 73 Mo. 387 ; *Reppstein v. Ins. Co.*, 57 Mo. 86 ; *McComas v. Ins. Co.*, 56 Mo. 573.

The plaintiff's notice to defendant of the loss was in the form of a letter addressed to defendant with which were inclosed proofs of loss.   The defendant in

answering the letter and acknowledging the receipt of the proofs stated that, " After investigating the facts fully we find no fire ensued to the damage of the property covered in your policy." If there was no fire there was no liability, and so the denial of the fire was a denial of the liability. The denial of the responsibility is not on account of the want of .timeliness of the notice of the loss nor of any defect or insufficiency therein or in the proofs of loss. But the loss was put upon the sole, independent and distinct ground that, there had been no fire, and, therefore, there was no liability to the plaintiff. Conceding, as we may, that the proof furnished in this case in respect to the delivery of the preliminary notice of the loss was defective, we are all of the opinion that the defendant has waived the right to object to it on that ground.

II. The second ground of the defendant's demurrer to the plaintiff's evidence is that it showed conclusively that the gasoline had been kept and used on and in the premises in violation of the conditions of the policy. The policy provides that if gasoline should be kept, stored or used in or on the premises described in the policy, the latter should be void. The premises described in the policy is "his two-story, brick dwelling-house with addition, occupied for family residence and situated on the southwest corner of Wyandotte and Eleventh streets, Kansas City, Missouri." The house is all that is described, and which is no doubt meant by the word, premises, as used in the conditions of the policy which forbids gasoline to be kept, stored or used "in or on the premises herein. described." Under the evidence in this case we are left to determine the boundaries of the premises alone from the description contained in the policy. Nothing is perceived in any provision of the policy which would justify us in concluding that the boundaries of the " premises " were intended to be more extensive than those of the house.

If there is a doubt in this respect that doubt must be resolved in favor of the assured. 1 Wood on Fire Ins. 60. A contract drawn by the insurer, who makes his own terms and imposes his own conditions, will not be tolerated as a snare to the unwary, and if the words employed of themselves, or in connection with other language used in the instrument or in reference to the subject-matter to which they relate are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the assured. *Hoffman v. Ins. Co.*, 32 N. Y. 405; *Reynolds v. Ins. Co.*, 47 N. Y. 597. The language of the policy is the language of the defendant, and should be construed most strongly against it. 1 Wood on Fire Insurance [2 Ed.] sec. 60; May on Insurance [2 Ed.] sec. 175. If, as the evidence conclusively shows, the can of gasoline stood in the yard ten or twelve feet from the house then it is plain enough that it was not kept stored or used on or in the premises within the meaning of the terms employed in the prohibitory clause. The policy covers no such case.

But the uncontradicted evidence is that the plaintiff's tenant or his servants did occasionally, how often it does not appear, introduce gasoline in small quantities into the house, for the purpose of destroying vermin, with which the kitchen was at times infested, and also for cleaning clothes, etc. Was this such an use of gasoline as would render the policy inoperative? The rule is that the use of a prohibited article which will forfeit a policy must be an *habitual use for the ordinary purposes to which such article is usually put and not an occasional introduction and use for a temporary and extraordinary purpose connected with the occupation of the premises.* 1 Wood on Fire Insurance [2 Ed.] sec. 84; May on Fire Ins. [2 Ed.] sec. 241; *Ins. Co. v. Simmons*, 30 Pa. St. 302; *Williams v. Ins. Co.*, 54 N. Y. 572; *Mears v. Ins. Co.*, 92 Pt. St. 20. In *Williams v. Ins. Co.*, 54 N. Y. 569, the plaintiff kept a

small jug of crude petroleum in his room for occasional use in anointing his person, and it was alleged that this was a violation of a provision in a policy against storing petroleum upon the premises insured. The court said the petroleum was not stored within the meaning of the policy. It was not enough that the petroleum was upon the premises; the *premises must have been used and appropriated for storing it.* In *Ins. Co. v. Langdon,* 6 Wend. 627, it was said by Judge SUTHERLAND: "It appears to me that the word 'storing' was used by the parties in this case in the sense contended for by plaintiff, viz., a keeping for safe custody to be delivered out in the same condition substantially, as when received, and appears only when the storing or safe keeping is the *sole or principal object of the deposit, and not when it is merely incidental and the keeping is only for the purpose of consumption.*" In *O'Neil v. Ins. Co.,* 3 Comstock (N. Y.) 122, it was held that oil and turpentine brought into a house for the purpose of painting it were not stored therein within the meaning of a clause in the policy prohibiting the storing of such articles, where a policy contained a stipulation that if the building insured should be used for storing therein hazardous or extra hazardous goods, the policy should be of no effect. Among the memorandum articles classed as hazardous were oils and spirituous liquors. These articles had been kept in quantity in the cellar of the building, and from the casks there stored smaller vessels had been replenished for the retail trade. Such use, keeping or storage was held not to be a violation of the conditions. So it was held under a similar policy that the keeping of spirituous liquors in the building, in quantity sufficient for the boarders in the house, was not a breach of the condition So, when cotton in bales was among the articles enumerated hazardous, keeping a sufficient quantity for sale was ruled not to forfeit the policy upon a stock in a store. So having upon the premises the prohibited

articles for the purpose of making repairs, as oil and spirits of turpentine for painting, or tar burned in the building for tarring it, does not avoid the policy. So it was held that a policy which expressly prohibited camphene or friction matches from being deposited, used, kept or sold in a building, etc., was not violated by a casual use of camphene, or friction matches. *Ins. Co. v. Simmons*, 30 Pa. St. 299. In *Hynds v. Ins. Co.*, 11 N. Y. 554, it was held that a condition in a policy, against using the premises insured for storing or keeping, amongst other things, flax, was not violated by the fact that a small quantity of flax happened to be left on the premises. In *Liggett v. Ins. Co.*, 10 Rich Law ( S. C.) 202, the insurance was on a "stock of goods and merchandise," with a stipulation that if the premises be appropriated, applied or used for the purposes of storing or keeping therein "oil and cotton" the policy should be of no effect during such use. A barrel of oil with bunches of cotton near it had been kept in the back part of the store for a short time previous to the fire. It was held that the case was not covered by the policy, and, if it had been, it should have been construed to forbid the appropriation or chief use of the building for any of the prohibited purposes, and not the incidental keeping of small quantities of prohibited articles for retail along with the general stock of goods.

None of the cases cited by the defendant to which we have had access in any manner impugn the correctness of the rulings in the cases to which reference has been made by us. According to these authorities it is quite obvious that the occasional introduction into the house of plaintiff of small quantities of gasoline for the purpose of destroying vermin or cleaning clothes was not, in a commercial or legal sense, such an habitual use thereof "on or in the premises" as was forbidden by the prohibitory clause of the policy. We think that in any view, which may be taken of the evidence adduced by the plaintiff, that at the date of the fire the

policy was alive and in force, and that therefore the trial court did not error in refusing the defendant's instruction, which was in the nature of a demurrer.

III.    The appealing defendant calls in question the correctness of the first instruction for the plaintiff on the double ground, *first*, that there was no evidence that the gasoline was used without plaintiff's knowledge or consent, and, *second*, if there was such evidence upon which to base the instruction, it is erroneous because the use of gasoline was absolutely prohibited with or without plaintiff's knowledge.    It is now the well-established rule of law that a violation of any of the prohibitions of a policy by the tenant of the assured is a violation by the assured himself.    *Ins. Co. v. Guenther*, 16 U. S. 113; *Kelly v. Ins. Co.*, 97 Mass. 284; *Deihl v. Ins. Co.*, 58 Pa. St. 443.    The last two cases cited seem to encroach upon the older cases of *Sanford v. Ins. Co.*, 12 Cush. 541; *Ins. Co. v. Simmons*, 30 Pa. St. 299, but whether this is so or not the rule, as we have stated it to be, is, as we think, supported by the very highest authority, and, besides being consonant with both reason and public policy, should be followed by us.    Whether the witness, Sarah Evans, carried the gasoline into the house with or without the knowledge or consent of the plaintiff was wholly immaterial.    The jury was required by this instruction to find a fact which was not essential to the plaintiff's right of recovery.    If the jury found the other facts required by the instruction, the verdict should have been for the plaintiff whether the element of knowledge or consent was or was not found by it to have existed at the time the witness carried the gasoline in the house.    The finding of this fact by the jury in no way prejudiced the defendant, and constitutes no just ground for complaint.

Nor can the other objection to the instruction that the policy absolutely prohibited the use of gasoline in the house be sustained.    Under the authorities which we have referred to, the use of gasoline was not under

the conditions of the policy absolutely prohibited. The use to be within the prohibition of the policy must be an habitual use as distinguished from an incidental or occasional use. Except as to the matter of knowledge and consent the instruction according to our interpretation of the terms of the policy was correct enough in its theory.

IV. The defendant has lodged these objections against the plaintiff's second instruction : *First*. That it directs a verdict for plaintiff if the jury find the gasoline was used without plaintiff's knowledge or consent, and, *second*, that it "ignores the fact that gasoline had been habitually used on the premises and virtually directs the jury to find for the plaintiff if the use of gasoline, in the way it was used on that occasion, was the cause of the fire and explosion." As to the first objection we may remark that what was said in relation to " knowledge or consent" of plaintiff in connection with plaintiff's first instruction is applicable here, and need not be repeated. We may supplement what was there said with the further observation that, if the plaintiff himself instead of Sarah Evans had carried the gasoline into the kitchen under the circumstances outlined to the jury in the instructions of the plaintiff, in such case he would have been entitled to a verdict.

As to the second objection we may say that we do not think the plaintiff's evidence established the fact that gasoline had been habitually used on the premises. In this case there is no room for question concerning a series of causes, as whether primary or secondary, proximate or remote; for the agent is one and the same throughout, namely, fire. At each stage it was the action of fire. The agent was fire, though it acted in different ways upon the different successive subjects of its action, beginning with the match and terminating with the plaintiff's house.

It is no sufficient answer to say that some of the phenomena produced were in the form of an explosion.

All the effects whatever they may be in form are the natural results of the combustion of combustible substance ; and, as the combustion is the action of fire, this must be held to be the proximate and legal cause of all damages done the premises of the plaintiff.  There was a fire within the policy which preceded the explosion, and it logically results that the insurer is liable to the assured for the damages done by both fire and explosion.  This statement of the law is well supported by the authorities.  1 Wood on Fire Ins. [ 2 Ed.] sec. 104 ; May on Insurance [ 2 Ed.] sec. 413 ; *Scripture v. Ins. Co.*, 10 Cush. 356 ; *Washburn v. Ins. Co.*, 9 Ins. Law Jour. 68, 424, 761.  The hypothesis of the plaintiff's second instruction it will be seen upon examination is quite unexceptionable.

V.  The defendant's instructions were all properly refused.  All of them except the fifth proceed upon the erroneous assumption that the occasional or casual introduction of gasoline on the plaintiff's premises in a quantity however small, for any purpose whatever, is prohibited by the terms of the policy.

The motion that the use must be habitual or at least something more than occasional or incidental is not countenanced.

The defendant's fifth instruction is obnoxious to the objection that it submits a question of law for the determination of the jury.  It was for the court, and not for the jury, to say upon the undisputed evidence in the case whether the use of the gasoline was such as avoided the policy.  If the facts were disputed it would have been proper for the court to have indicated the essential facts constituting an use prohibited by the policy, and to have left it to the jury to say whether such facts were established by the evidence.  But to leave it, as the instruction did, to the jury to determine both law and fact was highly improper.

It necessarily follows from what has been said that the judgment will be affirmed, which is so ordered.  All concur.